CLAIBORNE, Judge.
Plaintiff sues on a note incidentally seeking recognition of a chattel mortgage purportedly given to secure the indebtedness. Defendant sets up discharge in bankruptcy as a defense. Plaintiff contends that subsequent to the filing of the petition in bankruptcy, defendant orally reaffirmed the indebtedness. From a judgment rejecting its demands, plaintiff appeals. We affirm.
The question is whether there was a new promise or agreement to pay.
Following receipt of notice of the filing of a petition in bankruptcy, plaintiff’s manager, Corliss Herring, called the defendant. Mr. Herring described the contact as follows:
Q And what was Mr. Daigle’s response?
A That he would go ahead and continue paying as he had done before I received the notice.
Q How do you mean he would continue paying before he received the notice, would you clarify that?
A Well, he had been paying every month before this, and I, when I got it I was a little shocked and called him to see what had happened, and he said that he would continue to pay it. *1193 And I received a payment two days after I received the bankruptcy notice.
Q And how many payments after that did he make?
A He paid three payments after I received the notice.
Mr. Herring also testified as follows:
Q Can you recall verbatim just what this gentleman said over the phone when you talked to him?
A You mean after I received the notice?
Q Yes, the only time you talked to him.
A Right. No, all he told me that he was going to continue to pay this account.
Q And that is the sum and substance about what he said?
A That’s about right, yes.
The bankruptcy notice was dated April 21. Payments were received on April 23, May 19 and June 23.
Mr. Fred Johnson, an employee of the finance company also called Mr. Daigle the day after the bankruptcy notice was received. He testified as follows:
Q And what did Mr. Daigle say?
A He said that he always paid his account, and he would continue to pay the account, the account as he had in the past.
Q Did he indicate what the payments would be?
A Not at, he did not indicate it. I mentioned to him what the payment schedule was, and he did, said that he would go along with that, and the payment schedule is twenty-five payments at thirty-six dollars and forty-one cents.
Q Did he make any payments subsequent to that conversation?
A Well, he made three payments after that, excuse me, two payments after that. We received a payment on the 23rd of April, one on the 19th of May and one on the 23rd of June. So, after our conversation, well, really, I guess two payments were made, but one had been made prior to the conversation.
Mr. Herring was unable to state what disposition had been made of the mortgaged property by the bankruptcy trustee. Plaintiff had apparently made no effort to file a proof of claim or otherwise pursue the matter in bankruptcy court. No representative was sent to the meeting of creditors.
The District Court held that the indication by Mr. Daigle that he intended to pay was nothing more than an acknowledgment of a moral obligation to pay the debt. The court further held that neither the debtor’s words nor his actions constituted a reaffirmation of the indebtedness as an enforceable obligation.
In Irwin v. Hunnewell, 207 La. 422, 21 So.2d 485, (La.1945) the Supreme Court quoted the following paragraphs from 8 C.J.S., Bankruptcy, § 583, p. 1571 and 6 Am.Jur., Bankruptcy, § 532, p. 832, respectively:
“In order to revive a liability on a debt discharged in bankruptcy or to create a new enforceable obligation, there must be an express promise to pay the specific debt, made to the creditor or his agent, and while no particular form of language is necessary, to constitute such a new promise there must be a clear, distinct, and unequivocal recognition and renewal of the debt as a binding obligation, anything short thereof being insufficient, as, for example, the mere acknowledgment of the discharged debt, or the expression of hope, desire, expectation, or intention to pay or revive the same.”
“Unless otherwise provided by statute, an enforceable promise to pay a discharged debt may be made orally. The promise must, however, be either express or directly implied in the terms used; it cannot be implied simply from conduct recognizing the debt, for example, from a payment on account of either principal or interest. No particular form of words need be used provided the promise is clear, distinct, and unequivocal, and is constituted of words which in their natural import identify the debt and express a present intention on the part of the bankrupt to bind himself to its payment. A *1194 simple acknowledgment of the justness of a debt and of its present existence as a debt formerly contracted and now unpaid, or the expression of a hope, desire, expectation, or intention to pay, is not sufficient. Nor is the effect of a discharge avoided by a promise to do something other than pay the discharged debt.”
See also Securities Finance Company v. Washington, 195 So.2d 733 (La.App. 1st Cir. 1967).
A subsequent promise to pay is a new obligation of which the preexisting debt is only the consideration. The obligation must, therefore, clearly result from the words used, or it cannot be enforced. Bartlett v. Peck, 5 La.Ann. 669 (La.1850).
To be effective such a promise must be (to recapitulate the words variously used in the jurisprudence) direct, definite, express, clear, distinct, unambiguous and unequivocal.
Plaintiff cites Credithrift of America No. 4, Inc. v. Nash, 256 So.2d 308 (La.App. 1st Cir. 1971). That case is distinguishable, however, in that the debtor, after the bankruptcy hearing, told the creditors’ manager that if he would not seize the furniture on which the finance company held a chattel mortgage, the debtor would recommence payments on the note in a specific month. Based on these assurances the finance company manager agreed to withhold action on the account at that time. The debtor conceded that he had made such an agreement.
The creditor’s acceptance of an offer or proposal to make a new contract for the payment of the discharged debt creates an enforceable contract. (See Irwin v. Hunnewell, supra, quoting 6 Am.Jur., Bankruptcy, p. 533.) In Credithrift of America No. 4, Inc. v. Nash, supra, there was an agreement or promise to pay.
We agree with the District Court that in the present case the acknowledgment of the debt by the bankrupt was not an unambiguous promise to pay but a recognition of a moral obligation.
For the foregoing reasons, the judgment of the District Court will be affirmed at appellant’s cost.
Affirmed.